## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC. and CHARLES RIVER WATERSHED ASSOCIATION, INC.<br><br>                                                   Plaintiffs,<br><br>v.<br><br>Michael S. REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, David CASH, in his official capacity as Regional Administrator for Region I of the U.S. Environmental Protection Agency, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>                                                   Defendants. | Case No. 22-_____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>November 2, 2022<br><br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1388) |

Plaintiffs, for their Complaint against Defendants, state as follows:

### INTRODUCTION

1.      Plaintiffs Conservation Law Foundation, Inc. ("CLF") and Charles River Watershed Association, Inc. ("CRWA") (collectively, "Plaintiffs") bring this action pursuant to 33 U.S.C. § 1365(a)(2) and 5 U.S.C. § 702 for declaratory, injunctive, and such relief as may be necessary to require Defendants Michael S. Regan ("Administrator"), Administrator of the U.S. Environmental Protection Agency ("EPA"), David Cash, Regional Administrator for Region 1 of EPA, and EPA (collectively, "Defendants") to perform their nondiscretionary duties under the Clean Water Act, 33 U.S.C. §§ 1251–1388, ("CWA" or the "Act") and to implement and

1

administer the Act in a manner that complies with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06.

2.      This lawsuit seeks to require Defendants to comply with federal laws to protect Greater Boston waterways from pollutants that are harmful to human and ecological health.

3.      EPA has determined that Clean Water Act permits are necessary to control stormwater pollution entering the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed.

4.      But Defendants have fallen short of their duties under the CWA and APA by not performing duties that arise from their determination.

5.      CLF brings this lawsuit to compel Defendants to timely perform their nondiscretionary duties and bring about long-awaited protection of crucial Massachusetts waterways from stormwater pollutants.

## JURISDICTION AND VENUE

6.      Plaintiffs invoke this Court's subject matter jurisdiction under 33 U.S.C. § 1365 (citizen suit provision), 5 U.S.C. §§ 702, 706 (judicial review), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (declaratory judgment).

7.      Plaintiffs seek relief that the Court has authority to grant. 33 U.S.C. § 1365(a); 5 U.S.C. §§ 702, 706; 28 U.S.C. §§ 2201–02.

8.      Defendants' failure to perform a nondiscretionary duty(s) is subject to review under the citizen suit of the CWA. 33 U.S.C. § 1365(a)(2).

9.      Plaintiffs are "citizens" under the CWA citizen suit provision and have authority to bring this lawsuit. 33 U.S.C. §§ 1365(g), 1362(5).

10.     Pursuant to 33 U.S.C. § 1365(b)(2), on July 14, 2022, Plaintiffs, by and through their counsel, notified Defendants of their intent to file suit under the CWA in a letter via certified mail ("Notice Letter").[1]

11.     The date of this Complaint is more than sixty (60) days after Plaintiffs mailed Defendants the Notice Letter.

12.     The CWA violations complained of in the Notice Letter are ongoing and continuous.

13.     Defendants' determination that permits are required to limit stormwater pollution in the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed is "final agency action" subject to judicial review under the APA. 5 U.S.C. §§ 702, 704, 706.

14.     Plaintiffs are "persons" under the APA and have authority to bring this lawsuit. 5 U.S.C. §§ 551(2), 702.

15.     Defendants remain in violation of the CWA and the APA.

16.     As of the filing of this Complaint, Defendants have not acted to redress the violations identified in the Notice Letter and this Complaint.

17.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(e) because the waters that are subject of this action are located in Massachusetts, Plaintiffs are located in this judicial district, and Defendants have official places of business and perform duties with respect to the subject matter of this Complaint in this District.

## PARTIES

<u>Plaintiffs</u>

18.     Plaintiff CLF is a nonprofit, member-supported environmental advocacy organization incorporated in Massachusetts and headquartered at 62 Summer Street, Boston, MA 02110. CLF

---

[1] Attached hereto as Exhibit A.

maintains offices in Boston, Massachusetts; Montpelier, Vermont; Concord, New Hampshire; Portland, Maine; and Providence, Rhode Island. In relevant part, CLF works on behalf of its New England-wide membership and with other environmental and community-based organizations to enforce environmental laws, including the CWA.

19.     Since 1966, CLF has successfully advocated for the prevention of water pollution, the protection of coastal waters and ecosystems, and the restoration of water quality throughout New England. On behalf of its members, CLF has successfully fought through administrative and judicial forums to reduce the flow of pollutants into the Charles River, Mystic River, and Neponset River Watersheds (collectively, the "Three Rivers") in Massachusetts.

20.     Plaintiff CRWA is a nonprofit, member-supported environmental organization incorporated in Massachusetts, with a principal place of business at 41 West Street, Floor 8, Boston, MA 02111. CRWA's mission is to protect, restore, and enhance the Charles River and its watershed through science, advocacy, and the law. In furtherance of its mission, CRWA studies the health of the Charles River and its watershed and advocates for solutions, including pollution reduction, to protect and restore the river and watershed.

21.     Plaintiffs have members who live, work, and/or recreate on and along the Three Rivers and are affected by the health of such water bodies.

22.     Plaintiffs' members use the Three Rivers, and tributaries and banks of the same, for fishing, canoeing, kayaking, rowing, swimming, hiking, bird watching, photography, other recreation, and education. They value the rivers' scenic beauty, wildlife, avian and aquatic habitat, natural resources, and recreational opportunities. Some members own real property abutting the Three Rivers and their tributaries. Others operate businesses adjacent or in close proximity to the Three Rivers.

23.     Plaintiffs' members are concerned about the impacts that unregulated stormwater discharges from land with impervious cover—containing excessive levels of nutrients, pathogens, bacteria, and other pollutants—have on the health of the Charles River, Mystic River, and Neponset River Watersheds. The health of the Three Rivers affects Plaintiffs' members' ability to use and enjoy the Three Rivers for their designated and existing purposes, including recreation and aesthetic enjoyment.

24.     Plaintiffs' members also care about the harm to their economic and property interests caused by stormwater pollution into the Three Rivers.

25.     Plaintiffs' members' injuries are caused, at least in part, by Defendants' failure to comply with the Clean Water Act and Administrative Procedure Act.

26.     The Court can remedy Plaintiffs' injuries by ordering Defendants to perform their nondiscretionary duties under the CWA and to comply with the APA to protect the Charles River, Mystic River, and Neponset River Watersheds from unregulated stormwater pollution.

<u>Defendants</u>

27.     Defendant Michael S. Regan, in his official capacity as Administrator of the EPA, must effectuate and enforce the CWA, including but not limited to 33 U.S.C. § 1342(p)(2)(E); 40 C.F.R. §§ 122.26(a)(1)(v), (a)(9)(i)(C)–(D).

28.     As Administrator, Defendant Michael S. Regan has the authority and ability to remedy the harms inflicted by Defendants' acts and omissions.

29.     Defendant David Cash, in his official capacity as Regional Administrator for Region 1 of EPA, supervises the administration and enforcement of the CWA in Region 1, including but not limited to 33 U.S.C. § 1342(p)(2)(E); 40 C.F.R. §§ 122.26(a)(1)(v), (a)(9)(i)(C)–(D).

30.     As Regional Administrator, Defendant David Cash has the authority and ability to remedy the harms inflicted by Defendants' acts and omissions.

31.     Defendant EPA is the federal agency responsible for implementing the CWA, including

but not limited to 33 U.S.C. § 1342(p)(2)(E); 40 C.F.R. §§ 122.26(a)(1)(v), (a)(9)(i)(C)–(D).

32.     Defendant EPA has the authority and ability to remedy the harms inflicted by

Defendants' acts and omissions.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act and Related State Law

33.     The purpose of the CWA is to "restore and maintain the chemical, physical, and

biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). This purpose includes the

elimination of "the discharge of pollutants into the navigable waters" and attainment of "water

quality which provides for the protection and propagation of fish, shellfish, and wildlife and

provides for recreation in and on the water." 33 U.S.C. §§ 1251(a)(1), (2).

34.     The CWA defines "navigable waters" as "waters of the United States." 33 U.S.C.

§ 1362(7).

35.     The Charles River, Mystic River, and Neponset River and their tributary streams are

"waters of the United States" as defined in EPA's implementing regulations. 40 C.F.R. §§ 122.2,

120.2.

36.     The CWA requires all states to adopt water quality standards for their water bodies,

subject to EPA review. 33 U.S.C. § 1313(c)(1). State water quality standards must: (1) designate

uses of the waterway (e.g., protection of aquatic life and recreational uses); (2) set water quality

criteria, expressed as either narrative or numeric standards; and (3) contain an anti-degradation

policy that protects existing uses. *See* 33 U.S.C. § 1313; 40 C.F.R. §§ 131.10–131.12.

37.     A water quality standard must take into account the water's "use and value for public

water supplies, propagation of fish and wildlife, recreational purposes, and agricultural,

industrial, and other purposes . . . ." 33 U.S.C. § 1313(c)(2)(A).

38.     Massachusetts establishes various water quality standards or class designations for surface waters, explains the criteria for each such class, and provides that a water body may not be degraded from its designated uses. *See* 314 Mass. Code Regs. 4.00.

39.     Massachusetts designated the Charles River, Mystic River, and Neponset Rivers as Class B waters, which support habitat for aquatic life and wildlife and recreation uses. 314 Mass. Code Regs. § 4.05(3)(b). Among other requirements, Class B waters shall not exceed the site-specific limits necessary to control accelerated or cultural eutrophication. *Id.* § 4.05(5).

40.     The Charles River is listed as an impaired water because it fails to meet its Class B water quality designation. Under the CWA and its implementing regulations, and Massachusetts law, the Charles River must be restored to its Class B designation. *See* 33 U.S.C. § 1313; 40 C.F.R. § 131.12; 314 Mass. Code Regs. §§ 4.01, 4.04, 4.05.

41.     The Mystic River is listed as an impaired water because it fails to meet its Class B water quality designation. Under the CWA and its implementing regulations, and Massachusetts law, the Mystic River must be restored to its Class B designation. *See* 33 U.S.C. § 1313; 40 C.F.R. § 131.12; 314 Mass. Code Regs. §§ 4.01, 4.04, 4.05.

42.     The Neponset River is listed as an impaired water because it fails to meet its Class B water quality designation. Under the CWA and its implementing regulations, and Massachusetts law, the Neponset River must be restored to its Class B designation. *See* 33 U.S.C. § 1313; 40 C.F.R. § 131.12; 314 Mass. Code Regs. §§ 4.01, 4.04, 4.05.

43.     Under the CWA, the National Pollutant Discharge Elimination System ("NPDES") prohibits the discharge of pollutants from a point source without a permit. 33 U.S.C. § 1311(a).

44.     EPA has primary authority to issue NPDES permits that contain, *inter alia*, limitations on the pollutants a permittee may discharge into the waters of the U.S. from a point source. 33 U.S.C. § 1342; 40 C.F.R. § 110.1.

45.     EPA may issue a general permit instead of individual NPDES permits. 40 C.F.R. § 122.28. If EPA decides to issue a NPDES general permit, EPA must prepare a draft permit, which shall be made publicly available and subject to public comment. *Id.* §§ 124.6(c)–(e), 124.10.

46.     Discharges composed entirely of stormwater are exempt from the NPDES permit requirement unless specifically prohibited under the Clean Water Act or by EPA. 33 U.S.C. § 1342(p)(1).

47.     "Storm water" means "storm water runoff, snow melt runoff, and surface runoff and drainage." 40 C.F.R. § 122.26(b)(13).

48.     The CWA moves certain stormwater discharges out of the exempted category if, *inter alia*, "the Administrator or the State, as the case may be, determines that the stormwater discharge contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States." 33 U.S.C. § 1342(p)(2)(E); *see also* 40 C.F.R. §§ 122.26(a)(1)(v), (a)(9)(i)(D) ("residual designation authority" or "RDA").

49.     The CWA also moves certain stormwater discharges out of the exempted category if, *inter alia*, the Director "determines that storm water controls are needed for the discharge based on wasteload allocations that are part of 'total maximum daily loads' (TMDLs) that address the pollutant(s) of concern." 40 C.F.R. § 122.26(a)(9)(i)(C).

50.     Members of the public may petition EPA to "require a NPDES permit for a discharge which is composed entirely of storm water which contributes to a violation of a water quality

standard or is a significant contributor of pollutants to waters of the United States." 40 C.F.R. § 122.26(f)(2).

51.     The Director "shall make a final determination on any petition received under [Section 122.26(f)(2)] within 90 days after receiving the petition." *Id.* § 122.26(f)(5).

52.     The "Director" is the "Regional Administrator" when EPA administers the NPDES program. *Id.* § 122.2.

53.     In Massachusetts, EPA administers the NPDES program, including regulation of stormwater pollution.

54.     When EPA exercises its residual designation authority, the covered stormwater dischargers are no longer exempt from the permit requirement and must obtain a permit to lawfully discharge pollutants, triggering EPA's nondiscretionary duty to initiate the permitting process for covered dischargers, which includes notifying covered dischargers and preparing a draft permit. 33 U.S.C. § 1342(p)(2)(E); 40 C.F.R. §§ 122.26(a)(1)(v), (a)(9)(i)(C)–(D), 124.52(b), 124.6(c).

## STATEMENT OF FACTS

### Stormwater Pollution

55.     Stormwater discharge occurs when water from rainfall or melted snow contacts impervious surfaces like roads, parking lots, roofs, and other paved areas. Unlike natural ground cover, impervious surfaces cannot absorb water.

56.     As water runs over impervious surfaces, it picks up pollutants and debris, including oil, metals, pesticides, trash, and sediments. The contaminated water then flows—untreated—into local waterbodies.

57.    Stormwater discharge elevates contaminant concentrations, reduces water quality, alters and destroys habitat, and makes waterways unsafe for their designated uses under water quality standards.

58.    Stormwater discharges can lead to water pollution caused by excessive nitrogen and phosphorus concentrations in waterways. Excessive nitrogen and phosphorus concentrations in stormwater discharges results in cyanobacteria overgrowth, which decreases dissolved oxygen levels in waterways and destroys plant and animal life.

59.    Cyanobacteria are commonly referred to as blue-green algae, an algae-like bacteria.

60.    Cyanobacteria produce and emit cyanotoxins.

61.    Exposure to cyanotoxins can lead to abdominal pain, headache, sore throat, vomiting and nausea, numbness, drowsiness, incoherent speech, salivation, and respiratory paralysis leading to death.

62.    Studies link cyanotoxin exposure to neurodegenerative diseases, like amyotrophic lateral sclerosis ("ALS").

63.    Stormwater discharge can carry pathogens, which have well-documented negative health effects on humans and pets.

64.    There are various types of health-threatening bacteria in stormwater discharge, such as fecal coliform bacteria and *Escherichia coli* bacteria ("E. coli").

65.    Fecal coliform bacteria and E. coli pose serious risks to human health, such as acute gastrointestinal illness, diarrhea, abdominal discomfort, fever, and vomiting and nausea.

66.    Sediment in stormwater discharges also has significant environmental impacts. It can harm fish and macroinvertebrate communities by decreasing light penetration in streams, smothering fish eggs, and transporting other pollutants like nutrients and metals.

67.     The impacts of stormwater pollution are particularly severe in urban areas, where

impervious surfaces cover high percentages of land. There is a direct relationship between high

levels of impervious cover in a watershed and decreased water quality in downstream waterways.

68.     Stormwater discharge is a significant cause of water pollution in the Three Rivers.

<u>Plaintiffs' Charles River Watershed Petition</u>

69.     Situated in eastern Massachusetts, the Charles River is one of the busiest recreational

river segments in the world and often filled with boaters, joggers, and other recreators.

70.     The entire watershed is about 310 square miles.

71.     The Charles River Watershed is highly urbanized with a high level of impervious cover,

which has resulted in the inability of land cover to absorb rainfall and remove pollutants that

natural land cover (e.g., vegetation and the soil matrix) would otherwise do by filtering the

runoff.

72.     Because the Charles River fails to meet water quality standards even after the

implementation of technology-based controls, Massachusetts developed total maximum daily

loads ("TMDLs"). 33 U.S.C. § 1313(d), 40 C.F.R. § 130.7.

73.     There are three TMDLs applicable to the Charles River; in all three TMDLs, EPA and the

Massachusetts Department of Environmental Protection ("MassDEP") determined that nutrient

and pathogen-polluted stormwater discharges from unpermitted commercial, industrial, and

high-density residential properties are a primary cause of ongoing violations of water quality

standards in the Charles River.[2]

---

[2] See EPA & Mass. DEP, Total Maximum Daily Load for Nutrients in the Upper/Middle Charles River,
Massachusetts (2011), https://www.mass.gov/doc/final-tmdl-for-nutrients-in-the-uppermiddle-charles-
river-0/download; EPA & Mass. DEP, Total Maximum Daily Loads for Nutrients in the Lower Charles
River Basin, Massachusetts (2007), https://www.mass.gov/doc/final-phosphorus-tmdl-report-for-the-
lower-charles-river-basin/download/; EPA & DEP, Final Pathogen TMDL for the Charles River

74.    Throughout the watershed, stormwater discharges carry high levels of phosphorous into the Charles River, triggering excessive cyanobacteria and aquatic plant growth and low and/or highly variable dissolved oxygen levels.

75.    Cyanobacteria blooms are occurring more frequently in the Charles River, causing negative human and environmental health effects.

76.    Phosphorus pollution in the Charles River also fuels excessive growth of aquatic invasive species, including Eurasian watermilfoil, variable watermilfoil, curly-leaf pondweed, fanwort, spiny/brittle naiad, and water chestnut.

77.    Aquatic invasive species create hazards for recreational users and degrade the ecosystem by crowding out native species.

78.    On May 9, 2019, Plaintiffs petitioned the Acting EPA Region 1 Administrator to exercise its residual designation authority to designate for NPDES permitting certain stormwater discharges from certain commercial, industrial, institutional, and multi-family residential properties in the Charles River Watershed.[3]

79.    In the petition, Plaintiffs detailed how stormwater discharges pollute the Charles River and prevent the Charles River from meeting its water quality standards.[4]

80.    In 2020, EPA conducted "a detailed stakeholder outreach process" on the topic of potentially regulating the unregulated sources of stormwater pollution in the Charles River watershed.[5]

---

Watershed (2007) https://www.mass.gov/doc/final-pathogen-tmdl-reports-for-the-charles-river-watershed-0/download.

[3] This petition is Exhibit I in the Notice Letter, Ex. A.

[4] *Id.*

[5] EPA, Environmental Challenges for the Charles River (last updated May 9, 2022), https://www.epa.gov/charlesriver/environmental-challenges-charles-river.

81.     In 2021, EPA performed comprehensive data analyses on the properties in the Charles River Watershed to construct potential permitting scenarios, each of which demonstrated a corresponding stormwater pollution reduction.

82.     On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for NPDES permitting certain stormwater discharges from commercial, industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed.[6]

83.     EPA's exercise of residual designation authority is based on its finding that such stormwater discharges contribute to water quality standard violations, are significant contributors of pollutants to the Charles River Watershed, and need to be controlled based on wasteload allocations that are part of the TMDLs.[7]

84.     EPA "plans to issue one or more general permits" pursuant to its designation.[8]

CLF's Mystic River Watershed Petition

85.     The Mystic River covers 76 square miles of Massachusetts, flowing from Reading into Arlington, Somerville, Medford, Everett, Chelsea, Charlestown, and East Boston.

86.     Many communities around the Mystic River Watershed do not view the water as a safe place to swim or bring their pets.

---

[6] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.
[7] *Id.* at 4–5 (citing 40 C.F.R. §§ 122.26(a)(9)(i)(C), (D)).
[8] *Id.* at 1.

87.     The Mystic River Watershed is highly developed and contains a significant amount of impervious land cover: "fields [have been] replaced with parking lots, footpaths with highways, pastoral riverbanks with polluting industrial activity and shipyards with oil storage facilities."[9]

88.     Stormwater runoff from such sources "have contributed to the decline of the watershed and water quality in the Mystic River."[10]

89.     EPA itself acknowledges that "inadequately controlled stormwater (SW) runoff from developed landscapes are [*sic*] the predominant source of nutrient loads–specifically phosphorus loads–to the surface waters of the Mystic River watershed" and that reducing stormwater runoff is "critical for meeting state and federal water quality regulations."[11]

90.     On August 24, 2020, CLF petitioned the Acting EPA Region 1 Administrator to exercise its residual designation authority to designate for NPDES permitting certain commercial, industrial, institutional, and multi-family residential properties in the Mystic River Watershed.[12]

91.     In the petition, CLF detailed how stormwater runoff discharges pollute the Mystic River and prevent the Mystic River from meeting its water quality standards.[13]

92.     On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for NPDES permitting certain stormwater discharges from commercial, industrial, and

---

[9] EPA, *About the Mystic River Watershed* (last updated Aug. 18, 2022),
https://www.epa.gov/mysticriver/about-mystic-river-watershed#BasicInformation.
[10] *Id.*
[11] EPA, Mystic River Watershed Alternative TMDL Development for Phosphorous Management – Final Report 5 (2020), https://www.mass.gov/doc/mystic-river-watershed-alternative-tmdl-development-for-phosphorus-management-final-report/download.
[12] This petition is Exhibit II in the Notice Letter, Ex. A.
[13] *Id.*

institutional properties with one acre or more of impervious surface in the Mystic River Watershed.[14]

93.     EPA's exercise of residual designation authority is based on its finding that such stormwater discharges contribute to water quality standard violations, are significant contributors of pollutants to the Mystic River Watershed, and need to be controlled based on wasteload allocations that are part of the TMDLs.[15]

94.     EPA "plans to issue one or more general permits" pursuant to its designation.[16]

<u>CLF's Neponset River Watershed Petition</u>

95.     The Neponset River flows through Foxborough, Dorchester, and Quincy and is a drinking water source for about 120,000 people and home to various species of mammals, fish, birds, and plants.

96.     However, the Neponset River experiences tremendous bacteria pollution problems, such as fecal coliform bacteria.

97.     Stormwater pollution is a significant contributor to such bacteria in the Neponset River because much of the Neponset River Watershed area has been urbanized or made residential, leading to many impervious surfaces.

---

[14] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.
[15] *Id.* at 4–5 (citing 40 C.F.R. §§ 122.26(a)(9)(i)(C), (D)).
[16] *Id.* at 1.

98.     In the TMDL for the Neponset River, MassDEP recognizes that "[i]mproving storm

water runoff quality is essential for restoring water quality and recreational uses" on the

Neponset River.[17]

99.     On August 24, 2020, CLF petitioned the Acting EPA Region 1 Administrator to exercise

its residual designation authority to designate for NPDES permitting certain stormwater

discharges from certain commercial, industrial, institutional, and multi-family residential

properties contribute to water quality standards violations in the Neponset River Watershed.[18]

100.    In the petition, CLF detailed how stormwater runoff discharges pollute the Neponset

River and prevent the Neponset River from meeting its water quality standards.[19]

101.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to

designate for NPDES permitting certain stormwater discharges from commercial, industrial, and

institutional properties with one acre or more of impervious surface in the Neponset River

Watershed.[20]

102.    EPA's exercise of residual designation authority is based on its finding that such

stormwater discharges contribute to water quality standard violations, are significant contributors

of pollutants to the Neponset River Watershed, and need to be controlled based on wasteload

allocations that are part of the TMDLs.[21]

---

[17] Mass DEP, Total Maximum Daily Loads of Bacteria for Neponset River Basin 38 (2002),
https://www.mass.gov/doc/final-tmdls-of-bacteria-for-neponset-river-
basin/download#:~:text=The%20goal%20of%20the%20Neponset,water%20runoff%2C%20and%20ultim
ately%20restore.
[18] This petition is Exhibit III in the Notice Letter, Ex. A.
[19] *Id.*
[20] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the
Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022),
https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-
2022-combine-signed.pdf.
[21] *Id.* at 4–5 (citing 40 C.F.R. §§ 122.26(a)(9)(i)(C), (D)).

103.    EPA "plans to issue one or more general permits" pursuant to its designation.[22]

Past Exercises of the Residual Designation Authority

104.    On July 26, 2022, EPA preliminarily designated for NPDES permitting certain

stormwater discharges from commercial, industrial, and institutional facilities in two Los

Angeles County watersheds (Region 9).[23] On the same day, the corresponding draft NPDES

general permit was published.[24]

105.    On October 28, 2009, EPA designated for NPDES permitting certain stormwater

discharges to Long Creek, Maine (Region 1). 74 Fed. Reg. 64075 (Dec. 7, 2009). The

corresponding general draft permit was published the next day on October 29, 2009.[25]

**CLAIMS FOR RELIEF**

**COUNT 1: VIOLATION OF THE CLEAN WATER ACT—FAILURE TO PERFORM
NONDISCRETIONARY DUTIES**

106.    Paragraphs 1–105 are incorporated herein by reference.

107.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to

designate for general NPDES permitting certain stormwater discharges from commercial,

---

[22] *Id.* at 1.

[23] EPA, *Public Notice: Preliminary Residual Designation to Address Stormwater Discharges in Two Los Angeles County Watersheds* (July 26, 2022), https://www.epa.gov/publicnotices/preliminary-residual-designation-address-stormwater-discharges-two-los-angeles-county.

[24] L.A. Reg'l Water Quality Ctrl. Bd., Proposed Issuance of Waste Discharge Requirements and National Pollutant Discharge Elimination System Permit for Commercial, Industrial, and Institutional Facilities in the Dominguez Channel/Greater Los Angeles and Long Beach Harbor Watershed and The Los Cerritos Channel/Alamitos Bay Watershed (2022), https://www.waterboards.ca.gov/losangeles/water_issues/programs/stormwater/Commercial_Industrial_and_Institutional/CII_PermitPublicNotice.pdf.

[25] MDEP, General Permit — Post Construction Discharge of Stormwater in the Long Creek Watershed (2015), https://www.maine.gov/dep/water/wd/long_creek/Long%20Creek%20GP%202015.pdf. Note that on November 6, 2009, MDEP issued a corrected version of the permit to accurately reflect the designated watershed as not including a pond that was previously included in error. *Id.* at 4. In 2015, MDEP reissued the 2009 permit, which is still in effect today. *Id.* at 6.

industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed.[26]

108.    When EPA exercises its residual designation authority over certain stormwater discharges, it must notify covered dischargers of the designation and the reasons for it. 40 C.F.R. § 124.52(b).

109.    To date, Defendants have not notified covered dischargers of the September 14th designation and the reasons for it. *Id.*

110.    Defendants' failure to notify covered dischargers of the September 14th designation and the reasons for it is a failure to perform nondiscretionary duties in violation of the Clean Water Act. *Id.*

111.    Any citizen may sue Defendants for failing to perform their nondiscretionary duties under the citizen suit provision of the CWA. 33 U.S.C. § 1365(a)(2).

112.    Defendants' violation has harmed, is harming, and will continue to harm Plaintiffs' members.

### COUNT 2: VIOLATION OF THE CLEAN WATER ACT—FAILURE TO PERFORM NONDISCRETIONARY DUTIES

113.    Paragraphs 1–112 are incorporated herein by reference.

114.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for general NPDES permitting certain stormwater discharges from commercial,

---

[26] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.

industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed.[27]

115.　When EPA exercises its residual designation authority over certain stormwater discharges and decides to issue a general permit(s), it must initiate the permitting process for such discharges, which includes preparing a draft permit. *See* 40 C.F.R. §§ 124.3, 124.52(b), 124.6(c).

116.　To date, Defendants have not prepared a draft permit pursuant to their September 14th designation for the Three Rivers.

117.　Defendants' failure to prepare draft permits with the September 14th designation is a failure to perform nondiscretionary duties in violation of the Clean Water Act. *See* 40 C.F.R. §§ 124.3, 124.52(b), 124.6(c).

118.　Any citizen may sue Defendants for failing to perform their nondiscretionary duties under the citizen suit provision of the CWA. 33 U.S.C. § 1365(a)(2).

119.　Defendants' violation has harmed, is harming, and will continue to harm Plaintiffs' members.

## <u>COUNT 3</u>: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—AGENCY ACTION UNREASONABLY DELAYED

120.　Paragraphs 1–119 are incorporated herein by reference.

121.　Plaintiffs plead Count 3 in the alternative.

122.　Under the Administrative Procedure Act ("APA"), a reviewing court shall compel agency action unreasonably delayed. 5 U.S.C. § 706(1).

---

[27] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.

123.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for general NPDES permitting certain stormwater discharges from commercial, industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed.[28]

124.    When EPA exercises its residual designation authority over certain stormwater discharges, it must notify covered dischargers of the designation and the reasons for it. 40 C.F.R. § 124.52(b).

125.    To date, Defendants have not notified covered dischargers of the September 14th designation and the reasons for it. *Id.*

126.    Defendants' failure to notify covered dischargers of the September 14th designation and the reasons for it within a reasonable time of the September 14th designation is agency action unreasonably delayed in violation of the APA. 5 U.S.C. § 706(1).

127.    Any person suffering legal wrong, adversely affected, or aggrieved by agency action may seek judicial review of such agency action. 5 U.S.C. § 702.

128.    Defendants' agency action unreasonably delayed has harmed, is harming, and will continue to harm Plaintiffs' members.

## COUNT 4: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—AGENCY ACTION UNREASONABLY DELAYED

129.    Paragraphs 1–128 are incorporated herein by reference.

130.    Plaintiffs plead Count 4 in the alternative.

---

[28] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.

131.    Under the Administrative Procedure Act, a reviewing court shall compel agency action unreasonably delayed. 5 U.S.C. § 706(1).

132.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for general NPDES permitting certain stormwater discharges from commercial, industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed, Mystic River Watershed, and Neponset River Watershed.[29]

133.    When EPA exercises its residual designation authority over certain stormwater discharges and decides to issue a general permit(s), it must initiate the permitting process for such discharges, which includes preparing a draft permit. *See* 40 C.F.R. §§ 124.3, 124.52(b), 124.6(c).

134.    To date, Defendants have not prepared a draft permit pursuant to their September 14th designation for the Three Rivers.

135.    Defendants' failure to prepare draft permits within a reasonable time of the September 14th designation is agency action unreasonably delayed in violation of the APA. 5 U.S.C. § 706(1).

136.    Any person suffering legal wrong, adversely affected, or aggrieved by agency action may seek judicial review of such agency action. 5 U.S.C. § 702.

137.    Defendants' agency action unreasonably delayed has harmed, is harming, and will continue to harm Plaintiffs' members.

---

[29] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.

### COUNT 5: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT— ARBITRARY AND CAPRICIOUS AGENCY ACTION

138.    Paragraphs 1–137 are incorporated herein by reference.

139.    Plaintiffs plead Count 5 in the alternative.

140.    Under the Administrative Procedure Act, a reviewing court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

141.    On September 14, 2022, EPA Region 1 exercised its residual designation authority to designate for general NPDES permitting certain stormwater discharges from commercial, industrial, and institutional properties with one acre or more of impervious surface in the Charles River Watershed.[30]

142.    The purpose of a residual designation is to subject various stormwater dischargers to permits that limit pollutants entering waterbodies. *See* 33 U.S.C. §§ 1251, 1311, 1342.

143.    When EPA exercises its residual designation authority over certain stormwater discharges and decides to issue a general permit(s), it must initiate the permitting process for such discharges, which includes preparing a draft permit. *See* 40 C.F.R. §§ 124.3, 124.52(b), 124.6(c).

144.    In EPA Region 1 and Region 9, NPDES permits were published on the same day of or the following day after the residual designation.

145.    Contrary to how Defendants have approached residual designations in the past, Defendants did not prepare draft permits with the September 14th designation.

---

[30] EPA, Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts 1 (2022), https://www.epa.gov/system/files/documents/2022-09/epa-r1-rda-determination-charles-mystic-neponset-2022-combine-signed.pdf.

146.     Defendants' failure to prepare drafts permits with the September 14th designation consistent with past exercises of residual designation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA. 5 U.S.C. § 706(2)(A).

147.     Any person suffering legal wrong, adversely affected, or aggrieved by agency action may seek judicial review of such agency action. 5 U.S.C. § 702.

148.     Defendants' arbitrary and capricious agency action has harmed, is harming, and will continue to harm Plaintiffs' members.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Court:

149.     Declare that Defendants are in violation of the CWA by failing to notify covered dischargers of the September 14th designation and the reasons for it;

150.     Declare that Defendants are in violation of the CWA by failing to prepare draft permits pursuant to the September 14th designation;

151.     Declare that Defendants have unreasonably delayed agency action in violation of the APA by failing to notify covered dischargers of the September 14th designation and the reasons for it within a reasonable time of the September 14th designation;

152.     Declare that Defendants have unreasonably delayed agency action in violation of the APA by failing to prepare draft permits within a reasonable time of the September 14th designation;

153.     Declare that Defendants have committed agency action that is arbitrary, capricious, an abuse of discretion, or not in accordance with law in violation of the APA by failing to prepare draft permits consistent with past residual designations;

154.    Order Defendants to publish in the Federal Register draft NPDES permits for the Three

Rivers pursuant to the September 14th designation within six (6) months of the judgment;

155.    Order Defendants to publish in the Federal Register a timeline for issuing the final

NPDES permits when it publishes the draft NPDES permits;

156.    Award Plaintiffs their reasonable litigation costs (including attorneys' fees) under 33

U.S.C. § 1365(d); and

157.    Grant such other relief as the Court deems just and proper.

Dated: November 2, 2022                    Respectfully submitted,

                                           CONSERVATION LAW FOUNDATION, INC.

                                           CHARLES RIVER WATERSHED
                                           ASSOCIATION, INC.

                                           By their attorneys:

                                           /s/ Caitlin Peale Sloan
                                           Caitlin Peale Sloan
                                           BBO No. 681484
                                           Conservation Law Foundation, Inc.
                                           62 Summer Street
                                           Boston, MA 02110
                                           (617) 850-1770
                                           cpeale@clf.org

                                           /s/ Heather A. Govern
                                           Heather A. Govern
                                           BBO No. 688482
                                           Conservation Law Foundation, Inc.
                                           62 Summer Street
                                           Boston, MA 02110
                                           (617) 850-1765
                                           hgovern@clf.org

                                           /s/ Ameya Gehi
                                           Ameya Gehi
                                           BBO No. 709194
                                           Conservation Law Foundation, Inc.
                                           62 Summer Street
                                           Boston, MA 02110
                                           (617) 850-1795
                                           agehi@clf.org