**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator of the U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | No. 22-CV-11863-RGS |

## MEMORANDUM IN SUPPORT OF EPA'S MOTION TO DISMISS

### INTRODUCTION

Not even two months after Defendant U.S. Environmental Protection Agency, et al. ("EPA") issued its "Clean Water Act Residual Designation Determination for Certain Stormwater Discharges in the Charles, Mystic, and Neponset River Watersheds, in Massachusetts" ("Residual Designation") (Attachment A), Plaintiffs Conservation Law Foundation and Charles River Watershed Association filed their complaint concerning allegedly delayed EPA actions. Specifically, Plaintiffs claim that EPA failed to timely notify potentially regulated stormwater dischargers of the Residual Designation and reasons for it, and to timely issue a draft Clean Water Act ("CWA") discharge permit pursuant to the Residual Designation. They also argue that EPA's plan to prepare draft permits after issuing the Residual Designation is arbitrary or capricious. Plaintiffs' claims suffer numerous independent defects that require dismissal of the Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) and (6).

### BACKGROUND

I.      **Legal Background**

A.      **Clean Water Act Stormwater Regulation**

The CWA prohibits "the discharge of any pollutant by any person" except in compliance

with the Act. 33 U.S.C. § 1311(a). Section 1342 establishes a permitting system called the

National Pollutant Discharge Elimination System ("NPDES") as the principal means of

compliance for certain sources that discharge directly to jurisdictional waters. EPA and

authorized states may issue NPDES permits for the discharge of pollutants from point sources.

*See* 33 U.S.C. § 1342(a), (b).[1]

Congress amended CWA section 1342 in 1987 to establish provisions that address

stormwater discharges. These provisions specify four categories of stormwater discharges that

are subject to regulation under the NPDES program. *See* 33 U.S.C. § 1342(p)(2)(A)-(D).

Congress also gave EPA "residual designation authority" over a fifth category of stormwater

discharges that, while generally exempt, is subject to NPDES permit requirements where EPA

(or a state) "determines that the stormwater discharge contributes to a violation of a water quality

standard or is a significant contributor of pollutants to waters of the United States," 33 U.S.C.

§ 1342(p)(2)(E), or where necessary "to protect water quality," 33 U.S.C. § 1342(p)(6).

EPA promulgated regulations addressing the stormwater discharge provisions of sections

1342(p)(2) and (p)(6). *See* 55 Fed. Reg. 47990 (Nov. 16, 1990); 64 Fed. Reg. 68722 (Dec. 8,

1999). The regulations address when and how EPA may exercise its residual designation

authority. For example, stormwater discharges require a NPDES permit if EPA "determines that

storm water controls are needed for the discharge based on wasteload allocations that are part of

'total maximum daily loads' (TMDLs) that address the pollutants of concern," 40 C.F.R.

§ 122.26(a)(9)(i)(C), or if EPA "determines that the discharge, or category of discharges within a

geographic area, contributes to a violation of a water quality standard or is a significant

---

[1] Massachusetts is one of three states (in addition to New Hampshire and New Mexico) for which EPA is the NPDES permitting authority.  *See* Residual Designation at 4 n.22.

contributor of pollutants to waters of the United States," *id.* § 122.26(a)(9)(i)(D).

If EPA makes such a determination, it may require specific dischargers to obtain an individual NPDES permit, 40 C.F.R. §§ 122.26(a)(9)(ii), 124.52, or it may issue a general NPDES permit for sources on a category-wide basis, 40 C.F.R. § 122.28. For individual permits, EPA's regulations generally require EPA to provide notice to the discharger of EPA's decision to require an individual permit and include a copy of the permit application. 40 C.F.R. §§ 122.26(a)(9)(ii), 124.52. The discharger then has 60 days to apply for the permit (unless EPA allows more time). *Id.* § 124.52(b). EPA's residual designation regulations also provide that "[t]he question whether the designation was proper will remain open for consideration during the public comment period" for the draft NPDES permit. 40 C.F.R. § 124.52(b)-(c). The regulations are silent as to the procedural requirements when EPA decides to issue one or more general permits, which are initiated by EPA and do not require an application from the discharger, for designated stormwater discharges. Whether proceeding via individual or general permit, the CWA and EPA's regulations contemplate the preparation of a draft NPDES permit, which is then subject to public notice and comment before a permit may be finalized. 33 U.S.C. § 1342(b)(3); 40 C.F.R. §§ 124.6, 124.10.

### B.      CWA Section 505 Mandatory Duty Suits

CWA section 505, known as the "citizen suit" or "mandatory duty" provision, allows any citizen to bring suit in district court "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). If the plaintiff demonstrates that a mandatory duty exists and that EPA has failed to perform it, then the appropriate remedy is for a court "to order the Administrator to perform such act or duty." 33 U.S.C. § 1365(a). If the plaintiff fails to

3

demonstrate that a mandatory duty exists, then Congress has not waived the United States' sovereign immunity from the claim, and the claim must be dismissed for lack of subject matter jurisdiction.

### C.   Administrative Procedure Act

The Administrative Procedure Act ("APA") authorizes judicial review of certain agency actions where no other statute provides an adequate legal remedy. 5 U.S.C. § 704; *Conservation Law Found. v. Busey*, 79 F.3d 1250, 1257 (1st Cir. 1996). Courts may set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). The APA also allows for judicial review of certain agency inactions under § 706(1), which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts may not review "agency action . . . committed to agency discretion by law." *Id.* § 701(a)(2). Thus, where agency inaction is challenged under the APA, courts may only compel an agency to take a discrete, legally required action. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

## II.   Factual and Procedural Background[2]

### A.   EPA's September 14, 2022, Residual Designation

`       On May 9, 2019, Plaintiffs petitioned EPA Region 1 pursuant to 40 C.F.R. § 122.26(f)(2) requesting that EPA "exercise its residual designation authority to designate for NPDES permitting certain stormwater discharges from certain commercial, industrial, institutional, and multi-family residential properties in the Charles River Watershed." Compl. ¶ 78. Plaintiffs submitted two additional petitions on August 24, 2020, requesting that EPA make the same designation for these discharges in the Mystic River watershed and the Neponset River

---

[2] EPA accepts the allegations of fact in the pleadings as true solely for purposes of this motion.

watershed. Compl. ¶¶ 90, 99. Plaintiffs sent EPA a notice of intent to file a citizen suit under

CWA section 505(a)(2) on July 14, 2022. Compl. ¶ 10; *id.* Exhibit A ("Notice Letter"). The

Notice Letter argued that EPA failed to act on Plaintiffs' three petitions within the timeframe set

forth in 40 C.F.R. § 122.26(f)(5). Notice Letter at 6-7. The Notice Letter does not refer to any

alleged nondiscretionary duty to issue a draft NPDES permit or provide notice to dischargers.

On September 14, 2022, EPA granted the petitions and issued the Residual Designation,

Compl. ¶¶ 82, 92, 101, "designating for NPDES permitting certain stormwater discharges from

commercial, industrial, and institutional properties with one acre or more of impervious surface

in the Charles, Mystic, and Neponset River watersheds." Residual Designation at 28-29

(footnotes omitted). EPA concluded that these discharges "contribute to violations of water

quality standards; are significant contributors of pollutants to waters of the United States; and

require stormwater controls based on wasteload allocations that are part of [total maximum daily

loads]." *Id.*

EPA made clear, however, that "this residual designation determination does not impose

immediate permitting requirements or obligations on the owners or operators of the sources of

the designated discharges . . . ." Residual Designation at 20. This is because "[t]he question

whether the initial designation was proper *will remain open for consideration* during the public

comment period" on EPA's intended forthcoming draft general permit(s) for the potentially

regulated discharges. Residual Designation at 1 (emphasis added). Accordingly, the potentially

regulated classes of dischargers "do not have to apply for individual permit coverage." *Id.*

### B.   Plaintiffs' Complaint

Less than two months after EPA's issuance of the Residual Designation—and without

providing notice of new or additional citizen suit claims—Plaintiffs filed the Complaint on

November 2, 2022. ECF No. 1. The Complaint includes challenges to two sets of EPA action (or

inaction), first arguing that EPA failed to perform alleged mandatory duties under the CWA, and second, in the alternative, arguing that EPA unreasonably delayed or acted arbitrarily and capriciously under the APA. Specifically, Counts 1 and 2 in the Complaint argue that EPA violated the CWA when it failed (1) to notify the new classes of dischargers of the Residual Designation and reasons for it, and (2) to prepare a draft NPDES permit with the Residual Designation. Compl. ¶¶ 106-19. Counts 3 and 4 alternatively argue that EPA has unreasonably delayed under the APA for its failure (1) to notify the new class of dischargers of the Residual Designation and (2) to prepare draft NPDES permits, within a reasonable time of issuing the Residual Designation. Compl. ¶¶ 120-37. Finally, Count 5 argues that EPA acted arbitrarily and capriciously under the APA by failing to prepare draft NPDES permits with the Residual Designation. Compl. ¶¶ 138-48. Each of these claims must be dismissed for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause of action lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Plaintiffs bear the burden of establishing this Court's subject matter jurisdiction over their claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) where a plaintiff fails to meet this burden. *See Kokkonen*, 511 U.S. at 377.

Challenges to subject matter jurisdiction may come in the form of facial challenges or factual challenges. A complaint "does not need detailed factual allegations," to survive a facial attack on subject matter jurisdiction, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007); *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69

(1st Cir. 2021). A Rule 12(b)(1) motion that challenges the sufficiency of the factual allegations

may involve factfinding to resolve disputed jurisdictional facts. *Cebollero-Bertran*, 4 F.4th at 69.

In analyzing motions to dismiss for failure to state a claim under Rule 12(b)(6) courts

"draw[] all inferences in the pleader's favor" to determine whether "the facts alleged in the

complaint, taken as true . . . state a plausible, not merely conceivable, case for relief." *Id.* at 69-

70 (citations omitted). This rule applies to allegations of fact but does not require inferences in

favor of a plaintiff's legal conclusions. *See Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

### A.     Plaintiffs Lack Article III Standing to Litigate Any of Their Claims.

The Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs lack

standing. An "irreducible constitutional minimum," Article III standing requires plaintiffs at this

stage of the case to allege sufficient facts for the court to conclude that they have suffered (1) an

"injury in fact" that is (2) "fairly traceable" to the defendants' alleged conduct, and is (3) "likely,

as opposed to merely speculative[ly,]" to be redressed by a favorable court decision. *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted); *see In re Evenflow*

*Co.*, 54 F.4th 28, 34 (1st Cir. 2022). An injury must be "concrete and particularized, actual or

imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted).

When the plaintiff is an organization, "organizational interests alone are insufficient to

confer standing," *Am. Waterways Operators v. U.S. Coast Guard*, No. 18-cv-12070, 2020 U.S.

Dist. LEXIS 10449, at *14 (D. Mass. Jan. 22, 2020). Among other things, an organizational

plaintiff must demonstrate that at least one of its members would satisfy the Article III standing

requirements. *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 & n.11 (1st Cir. 1996).

Plaintiffs bear the burden of "demonstrate[ing] standing for each claim they press and for each

form of relief they seek." *In re Evenflow Co.*, 54 F.4th at 34. "The plaintiff must set forth

reasonably definite factual allegations, either direct or inferential, regarding each material

element needed to sustain standing." *Dubois*, 102 F.3d at 1281 (cleaned up). Plaintiffs fail to

sufficiently allege that they have standing to bring the claims in the Complaint.

### 1.  Plaintiffs Do Not Have Standing to Challenge the Lack of Notice to the Newly Designated Class of Dischargers.

Plaintiffs have not demonstrated that any of their members satisfy the injury requirement

regarding EPA's failure to notify dischargers of the Residual Designation and reasons for it—the

legal basis of Counts 1 (CWA) and 3 (APA) in the Complaint. EPA's notice provision at 40

C.F.R. § 124.52(b), which pertains to "[p]ermits required on a case-by-case basis," states that

"[w]henever the Regional Administrator decides that an *individual permit* is required under this

section . . . the Regional Administrator shall notify *the discharger* in writing of that decision and

the reasons for it . . . ." *Id.* (emphasis added).

Plaintiffs have not alleged any concrete injury related to EPA's lack of notice to

dischargers. The Complaint alleges that Plaintiffs' members suffer specific harms stemming only

from unregulated discharges of stormwater, *see* Compl. ¶ 23, not from the lack of notice to

dischargers. While Plaintiffs argue that EPA's failure to notify dischargers "has harmed, is

harming, and will continue to harm Plaintiffs' members," Compl. ¶¶ 112, 128, these allegations

are conclusory, bereft of factual support, and do not satisfy Plaintiffs' burden. *See Dubois*, 102

F.3d at 1281. Plaintiffs have failed to demonstrate a qualifying concrete injury in connection

with any lack of notice to dischargers under Section 124.52(b).

Even if Plaintiffs alleged sufficient facts demonstrating injury, their injury is neither

fairly traceable to EPA's alleged failure to notify dischargers nor likely to be redressed by a favorable court decision.[3] Plaintiffs' members' alleged injuries flow from unregulated stormwater discharges, not the lack of notice to dischargers of the Residual Designation and reasons for it. Notifying the potentially regulated dischargers identified in the Residual Designation of EPA's designation and reasons for it is unlikely to redress Plaintiffs' alleged harm, especially when the Residual Designation remains open for public comment and does not require dischargers to take any action at this time. Residual Designation at 1, 5, 20. In other words, even if the Court were to declare that EPA failed to notify the potentially regulated dischargers,[4] the stormwater discharges of which Plaintiffs complain would remain unregulated unless and until EPA finalizes the designation, EPA issues a final NPDES permit, and dischargers obtain coverage under that permit. The connection between Plaintiffs' alleged injury, EPA's alleged failure, and the likelihood of redress is too tenuous to meet the requirements of Article III standing.

### 2.    Plaintiffs Lack Article III Standing to Challenge EPA's Failure to Issue a *Draft* NPDES Permit.

The Court also lacks subject matter jurisdiction over Counts 2, 4, and 5 in the Complaint because Plaintiffs cannot demonstrate that they have standing to challenge EPA's alleged failure

---

[3] EPA in fact provided the public with general notice of the Residual Designation, publishing the Residual Designation on its website and announcing it in a press release. *See* Watershed-Based Residual Designation Actions in New England, https://www.epa.gov/npdes-permits/watershed-based-residual-designation-actions-new-england (last visited May 31, 2023).

[4] Plaintiffs' requests for relief do not specifically request that the Court order EPA to notify dischargers of the Residual Designation and the reasons for it, just that the Court declare EPA acted unlawfully in failing to do so. Even if Plaintiffs were to include such a request, a Court order requiring that EPA notify the potentially regulated dischargers of the Residual Designation is unlikely to redress Plaintiffs' alleged injury for the same reasons explained above.

to timely issue a *draft* NPDES permit.[5]

Plaintiffs have not demonstrated that their injuries relate to any failure by EPA to issue a draft NPDES permit. No harm can flow from the lack of a draft permit because a draft permit has no legal effect or consequences. For similar reasons, Plaintiffs' alleged injury from unregulated stormwater discharges is not fairly traceable to the lack of a draft NPDES permit. Nor is it likely that a favorable decision by the Court ordering EPA to prepare a draft permit would redress those injuries. Unless and until it is finalized, a draft permit regulates nothing. A court order requiring EPA "to publish in the Federal Register draft NPDES permits" would therefore not redress the unregulated discharges of which Plaintiffs complain.[6] Compl. ¶ 154. Accordingly, Plaintiffs have not demonstrated that any of their members have standing to litigate the claims in the Complaint.

### B.   The Courts of Appeals Have Exclusive Jurisdiction over Claims Concerning the Issuance of Draft NPDES Permits.

Counts 2 and 4 of the Complaint challenge EPA's failure to issue a draft NPDES permit when it issued the Residual Designation. The CWA provides for exclusive subject matter

---

[5] If Plaintiffs attempt to argue that they are injured by, or claim that they are challenging, alleged unreasonable delay in issuing a *final* NPDES permit, this Court lacks subject matter jurisdiction based on the CWA's exclusive judicial review provision discussed *infra* at 10-12.

[6] Plaintiffs' request for a court order requiring EPA "to publish in the Federal Register a *timeline* for issuing the *final* NPDES permits when it publishes the draft NPDES permits" fares no better. Compl. ¶ 155 (emphasis added). Plaintiffs assert no claim in the Complaint for failure to issue a final permit. Regardless, ordering EPA to publish a timeline for its final NPDES permits is too speculative to be "likely" to redress Plaintiffs' alleged injuries, because it presupposes that EPA will find the initial designation to be proper, a regulatory judgment that has not been made. *See* Residual Designation at 1 (stating that EPA will consider "whether the initial designation was proper" during public comment on the draft permit); *Lujan*, 504 U.S. at 560 (redressability requirement is not satisfied where it is only speculative that a favorable court decision would redress plaintiff's injury). Likewise, any argument that a draft permit necessarily precedes a final permit is too attenuated to be "likely" to redress Plaintiffs' injuries. *See Lujan*, 504 U.S. at 560. And if it were not, this Court does not have jurisdiction where the relief "might affect [the court of appeals'] future statutory power of review," including the issuance of a final NPDES permit. *Infra* at 10-12.

jurisdiction over EPA's action in issuing or denying NPDES permits. 33 U.S.C. § 1369(b)(1)(F); *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018). Because a court order requiring EPA to issue a draft NPDES permit "might affect" future court of appeals judicial review of a final NPDES permit, Counts 2 and 4 are subject to the exclusive subject matter jurisdiction of the appropriate court of appeals.[7]

Congress granted the federal courts of appeals exclusive jurisdiction over certain agency actions under the CWA. 33 U.S.C. § 1369(b)(1); *Nat'l Ass'n of Mfrs*, 138 S. Ct. at 624. Judicial review of EPA actions in "issuing or denying any [NPDES] permit" is one such action. 33 U.S.C. § 1369(b)(1)(F). Accordingly, judicial review of any final NPDES permit that EPA may issue as a result of the Residual Designation would lie exclusively in the court of appeals. Because a final NPDES final permit is reviewable only in the courts of appeals, so too is any claim in which a plaintiff "seek[s] relief that might affect [the court of appeals'] future statutory power of review." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 72 (D.C. Cir. 1984); *see Sea Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997); *In re Sierra Club*, No. 12-1860, 2013 U.S. App. LEXIS 26450, at *2 (1st Cir. May 8, 2013). In *Sierra Club*, the First Circuit considered a petition for a writ of mandamus in which petitioners argued that EPA had unreasonably delayed in reissuing individual NPDES permits for two power plants. 2013 U.S. App. LEXIS 26450, at *2. The court ultimately denied the petition because the parties concurred with EPA's expected timeline for the permit, but the court first concluded that it had jurisdiction over claims for unreasonable delay in reissuing the NPDES permits. *Id.* (citing 33 U.S.C. § 1369(b)(1)(F) and *Sea Air Shuttle Corp.*, 112 F.3d at 535).

---

[7] EPA raises this argument as an additional basis to dismiss Counts 2 and 4 of the Complaint but notes that even if claims concerning draft NPDES permits were brought in the proper court of appeals, such claims would still raise questions of justiciability, including standing.

Here, Plaintiffs argue that EPA has either failed to perform a mandatory duty within the meaning of the CWA citizen suit provision, 33 U.S.C. § 1365(a)(2), or "unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1), in issuing draft NPDES permits with the Residual Designation. *See* Compl. ¶¶ 117, 135. They seek an order compelling EPA to issue the draft permits within six months, along with a schedule for the final permit. *Id.* ¶¶ 154-55. Any discussion of what a NPDES permit entails, including the schedule for development of that permit, "might affect" the court of appeals' purview to decide what is required in a NPDES permit. Thus, as in *Sierra Club*, Plaintiffs' claims and arguments based on issuance or denial of a NPDES permit belong in the court of appeals because an order from this Court "might affect" the future jurisdiction of the court of appeals under Section 1369(b)(1)(F). Accordingly, the CWA's judicial review provision provides an independent basis for this Court to dismiss Counts 2 and 4 for lack of subject matter jurisdiction.

### C.   Congress Has Not Waived the United States' Sovereign Immunity for Plaintiffs' Mandatory Duty Claims.

Counts 1 and 2 should also be dismissed under Rule 12(b)(1) because Plaintiffs do not state valid mandatory duty claims under the CWA. For a mandatory duty to exist, the duty must be "clearly mandated" and "nondiscretionary." *Conservation Law Found. v. EPA*, 223 F. Supp. 3d 124, 128 (D. Mass. 2017), *aff'd*, 881 F.3d 24 (1st Cir. 2018) (mandatory duty "is a prerequisite for federal jurisdiction under the CWA citizen suit provision" (quoting *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997)); *cf. Norton*, 542 U.S. at 63 (for APA unreasonable delay claim, there must be "a specific, unequivocal command . . . about which [the agency] has no discretion whatever" (cleaned up)).

To be enforceable under Section 505(a)(2), the duty must include a date-certain deadline. *See Sierra Club v. Thomas*, 828 F.2d 783, 792 (D.C. Cir. 1987) (duty in analogous citizen suit

provision of the Clean Air Act is discretionary where Congress has not included a date-certain deadline); *NRDC v. Thomas*, 885 F.2d 1067, 1075 (2d Cir. 1989) (adopting D.C. Circuit's reasoning). The duty must also be present in the statute itself. The citizen suit provision does not authorize judicial enforcement of a duty that is alleged to arise from EPA's discretionary regulations. *See* 33 U.S.C. § 1365(a)(2) ("act or duty under this chapter," not act or duty under CWA regulations); *Maine v. Thomas*, 874 F.2d 883, 888 n.7 (1st Cir. 1989) ("self-imposed regulatory deadlines . . . are not statutory nondiscretionary duties," and therefore "they are not proper grist for the [Section 505] mill." (emphasis removed)).

Basic principles of sovereign immunity support this conclusion. To the extent that the CWA citizen suit provision allows suit against the United States government, it is a waiver of sovereign immunity. Waivers of sovereign immunity must be clearly expressed in statutory text, "unequivocal," "not enlarged beyond what the language requires," and any ambiguities must be construed "in favor of the sovereign." *See Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Section 505 confers jurisdiction on the district court to enforce only an "act or duty under this chapter." The statute is therefore clear on its face that the duty must be in the CWA itself.

Arguments that the statutory language "act or duty under this chapter," includes regulatory obligations should be rejected as contrary to the rules of construction of waivers of sovereign immunity. Ambiguity in the language of the waiver is to be "'construed strictly in favor' of the EPA." *Conservation Law Found. v. Pruitt*, 881 F.3d 24, 28 (1st Cir. 2018) (quoting *Ohio*, 503 U.S. at 615). Reading Section 505(a)(2) as encompassing only duties stated in the statute itself is a "fair reading of the text" and it cannot be "enlarged." *FAA v. Cooper*, 566 U.S. 284, 290 (2012). Additionally, "officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the

absence of some express provision by Congress." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947). "[G]overnment regulations alone, without the express intent of Congress, cannot waive sovereign immunity." *Heller v. United States*, 776 F.2d 92, 98 n.7 (3d Cir. 1985); *see Plaskett v. Wormuth*, 18 F.4th 1072, 1086 (9th Cir. 2021).

Here, the CWA itself does not mandate either action that Plaintiffs seek to have this Court compel. Count 1 argues that EPA's "failure to notify covered dischargers of the September 14th designation and the reasons for it is a failure to perform nondiscretionary duties in violation of the Clean Water Act." Compl. ¶ 110. Plaintiffs cite no statutory provision for the supposed mandatory duty, and they cannot because none exists. Instead, they cite to EPA's regulation at 40 C.F.R. § 124.52(b), which applies to only individual permits, and which alone cannot give rise to a mandatory duty. Count 1 therefore fails to state a claim upon which relief can be granted.

Count 2 likewise fails to posit a proper enforceable act or duty under the CWA. Plaintiffs argue that EPA's "failure to prepare draft permits with the September 14th designation is a failure to perform nondiscretionary duties in violation of the Clean Water Act." Compl. ¶ 117. Yet again, Plaintiffs do not and cannot point to any statutory provision in the CWA, citing to only EPA's regulations at 40 C.F.R. §§ 124.3, 124.52(b), and 124.6(c). To entertain Plaintiffs' mandatory duty claim would be to improperly enlarge the waiver of sovereign immunity in section 505(a)(2) and improperly construe "chapter" of the United States Code to mean regulation in the Code of Federal Regulations.

Moreover, even if regulations *could* establish a citizen suit enforceable mandatory duty, which they cannot, the regulations that Plaintiffs cite here—to the extent they require EPA to take any action at all—afford EPA with discretion as to timing. First, as to their notice to dischargers argument, 40 C.F.R. § 124.52(b) provides that "[w]henever the Regional

14

Administrator decides that an individual permit is required under this section . . . the Regional

Administrator shall notify the discharger in writing of that decision and the reasons for it, and

shall send an application form with the notice." Importantly, the regulations provide no date

certain for EPA's notice. This silence is particularly weighty when juxtaposed with the explicit

60-day application period for the individual discharger, which follows in the next sentence of

Section 124.52(b): "The discharger must apply for a permit under § 122.21 within 60 days of

notice, unless permission for a later date is granted by the Regional Administrator." 40 C.F.R.

§ 124.52(b). Accordingly, Section 124.52(b) does not give rise to a mandatory duty.

The other two regulatory provisions cited—Sections 124.3 and 124.6(c)—also fail to

establish enforceable mandatory duties here. Section 124.6(c) provides that "[i]f [EPA]

tentatively decides to issue an NPDES or 404 general permit, he or she shall prepare a draft

general permit . . . ." Once again, this provision lacks a date certain for EPA action, and it does

not create an enforceable mandatory duty. Section 124.3 articulates EPA's permit application

process, which applies to individual permits, not general permits. *See* 40 C.F.R. § 124.3(a)(1).

General permits are governed by separate regulations at 40 C.F.R. § 122.28. Unlike individual

permits, general permits cover categories of discharges, and once a general permit is issued,

qualifying dischargers may take advantage of the permit, in compliance with its terms and

conditions, without submitting an application. *See id.* Section 124.3 is therefore irrelevant here. It

also contains no language establishing a mandatory duty for EPA to issue a draft individual

permit, much less a final general permit. Under Section 124.3(g), EPA need only "prepare and

mail" a permit applicant a "project decision schedule" that includes *target dates* for EPA's draft

permit process. By its own terms, this provision provides EPA with discretion as to when a draft

NPDES permit is prepared, falling far short from creating a "specific, unequivocal command . . .

about which [the agency] had no discretion whatever." *Norton*, 542 U.S. at 63 (cleaned up).

Accordingly, even if the Court were to look to the regulations, which cannot by themselves

establish a mandatory duty, they provide no support for Plaintiffs' mandatory duty claims.

## II.   EVEN IF THE COURT HAS JURISDICTION, COUNTS 1, 2, 3, AND 5 FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

### A.   Plaintiffs Fail to State a Valid CWA Mandatory Duty Claim Because They Did Not Provide EPA with Proper Pre-suit Notice of the Claims.

Plaintiffs' CWA claims must also be dismissed because Plaintiffs failed to comply with

the CWA's mandatory pre-suit notice requirements. Before filing suit, the CWA requires that

plaintiffs provide notice of their intended claims. *See* 33 U.S.C. § 1365(b). Claims alleging that

EPA failed to perform a mandatory duty may not be filed "prior to sixty days after the plaintiff

has given notice of such action to the Administrator." *Id.* § 1365(b)(2). This notice requires, at a

minimum, that plaintiffs (1) "identify the provision of the Act which requires such

[nondiscretionary] act or creates such [mandatory] duty" (2) "describe with reasonable

specificity the action taken or not taken by the Administrator which is alleged to constitute a

failure to perform such act or duty," and (3) "state the full name, address, and telephone number

of the person giving the notice," along with that of counsel (if any). 40 C.F.R. § 135.3(b), (c).

While not jurisdictional in this Circuit, *see Cebollero-Bertran*, 4 F.4th at 72, compliance

with the notice provision is a "mandatory condition precedent" to filing a citizen suit under the

CWA. *See id.* at 72 n.6; *Paolino v. JF Realty, LLC*, 710 F.3d 31, 36 n.4 (1st Cir. 2013). One

purpose of the notice requirement is to allow EPA "an opportunity to bring itself into compliance

with the Act and thus likewise render unnecessary a citizen suit." *Cebollero-Bertran*, 4 F.4th at

76 (quoting *Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987)); *Hallstrom v.

Tillamook Cnty.*, 493 U.S. 20, 29 (1989). While the notice need not "list every specific aspect or

detail of every alleged violation," the notice must achieve its purpose of identifying the claims

with reasonable specificity such that EPA may remedy the alleged violations. *Cebollero-Bertran*, 4 F.4th at 76 (cleaned up).

Plaintiffs' notice here was substantively insufficient to put EPA on notice of the CWA claims alleged in the Complaint (Counts 1 and 2). In their July 14, 2022, Notice Letter, Plaintiffs announced their intention to file suit against EPA for the agency's alleged failure to act on Plaintiffs' residual designation administrative petitions. Notice Letter at 2. EPA subsequently issued the Residual Designation, which addressed the threatened claims identified in the Notice Letter. *See* Residual Designation at 3 ("The [Notice Letter] alleges that EPA failed 'to perform an act or duty that is not discretionary under [§ 1342(p)(2)(e)]' based on EPA's failure to make a final determination on [Plaintiffs'] petitions . . . . EPA is now acting on [Plaintiffs'] residual designation petitions."). Without any further pre-suit notice to EPA, Plaintiffs filed the Complaint raising *different* alleged mandatory duties under the CWA.

It is not enough that Plaintiffs generally "notified Defendants of their intent to file suit under the CWA." Compl. ¶ 10; *see* 40 C.F.R. § 135.3(b). Nowhere in the Notice Letter do Plaintiffs specify the statutory or regulatory requirements that they now argue give rise to CWA citizen suit enforceable mandatory duties. Indeed, as explained *supra* at 12-16, there are no such statutory mandates. Thus, the Notice Letter fails to "identify the provision of the Act" that Plaintiffs argue requires EPA to issue draft NPDES permits or provide notice to potentially regulated dischargers, and the letter was insufficient to put EPA on notice of these claims. *See Conservation Law Found. v. EPA*, 223 F. Supp. 3d at 133-34.

Plaintiffs' Notice Letter is further deficient because it does not "describe with reasonable specificity the action taken or not" that would amount to a failure to perform a mandatory duty. *See id.* The Notice Letter says nothing about draft NPDES permits—much less any failure or

delay in issuing any draft permits. Nor does it contain any mention of EPA's supposed obligation to notify potentially regulated dischargers identified in the Residual Designation. These deficiencies cannot be cured during litigation. *See Garcia v. Cecos Int'l*, 761 F.2d 76, 79, 82 (1st Cir. 1985). Accordingly, Counts 1 and 2 must be dismissed.

### B.      Counts 3 and 5 Fail to State a Valid Claim under the APA.

#### 1.      There is no legal requirement that EPA notify the potentially regulated dischargers.

The APA provides a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). This provision does not allow courts to compel any activity within the agency's power. Instead, where a plaintiff challenges agency inaction, that claim must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64; *see* 5 U.S.C. § 701(a)(2) (excepting "agency action . . . committed to agency discretion by law" from APA review).

In Count 3, Plaintiffs argue that EPA's "failure to notify covered dischargers of the September 14th designation and the reasons for it within a reasonable time of the September 14th designation is agency action unreasonably delayed in violation of the APA." Compl. ¶ 126. But EPA has no such discrete obligation that it is required to take. Section 124.52(b) ("Permits required on a case-by-case basis") provides that "[w]henever the Regional Administrator decides that an *individual permit* is required under this section . . . the Regional Administrator shall notify the discharger in writing of that decision and the reasons for it . . . ." 40 C.F.R. § 124.52(b) (emphasis added).

On its face, the regulation requires notice to dischargers only where EPA decides to require an individual permit. *See Conservation Law Found. v. Pruitt*, 881 F.3d at 31 (notice under Section 124.52(b) "is triggered only when the EPA decides that an individual permit is

required" and "if the EPA could require a general permit as opposed to an individual one, then one cannot conclude that it has a nondiscretionary duty to inform dischargers that they must secure the latter"). The Residual Designation here repeatedly states that EPA plans to develop one or more *general permits* for the new classes of dischargers identified in the Residual Designation. *See, e.g.*, Residual Designation at 1. Section 124.52(b) therefore does not legally require EPA to provide notice to all dischargers identified in the Residual Designation, and Plaintiffs have failed to state a viable claim in Count 3 of the Complaint. The Court should dismiss Count 3 pursuant to Rule 12(b)(6).

### 2.    There is no requirement that EPA issue a draft NPDES permit with the Residual Designation.

Plaintiffs also argue in Count 5 that it was arbitrary, capricious, or contrary to law under 5 U.S.C. § 706(2)(A) for EPA to "fail[] to prepare drafts [*sic*] permits with the September 14th designation consistent with past exercises of residual designation . . . ." Compl. ¶ 146. Plaintiffs cite no legal authority that requires EPA to issue a draft permit in conjunction with its exercise of residual designation authority. The CWA and its implementing regulations are silent as to the procedural requirements when EPA opts to designate new categories of dischargers and develop general NPDES permits. EPA accordingly retains broad discretion to determine how to proceed when it exercises its residual designation authority. Depending on the circumstances, EPA may choose to prepare a draft NPDES permit with the designation, or it may choose to designate first and develop a draft permit thereafter.[8] Where the statute is silent, the Court should not fashion

---

[8] Indeed, Plaintiffs do not even contend that EPA must follow a uniform procedure. They point to examples in Los Angeles, California and Long Creek, Maine (which are readily distinguishable from the present case), where "NPDES permits were published on the same day of *or* the following day after the residual designation," respectively. Compl. ¶ 144 (emphasis added); *see id.* ¶¶ 104-05.

agency procedures. *Cf Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 545 (1978)
(rejecting argument that courts may require more procedure than statute (APA) requires).

      To the extent that Count 5 attempts to challenge the Residual Designation itself because it
was unaccompanied by a draft NPDES permit, the claim must be dismissed because the Residual
Designation here is not a reviewable final agency action under 5 U.S.C. § 704. EPA expressly
stated in the Residual Designation that the appropriateness of the designation remains open
through public comment on the draft general permit(s), and the newly identified classes of
potential dischargers are not required to seek permit coverage until EPA takes further action. *See,
e.g.*, Residual Designation at 1, 5. *See Berkshire Env't Action Team v. Tenn. Gas Pipeline Co.*,
851 F.3d 105, 111 (1st Cir. 2017); *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (to be
final, the action must "mark[] the consummation of the agency's decisionmaking process" and be
one from which "legal consequences flow"). The Residual Designation is not EPA's last word on
the matter, and no legal consequences flow from it. Thus, Count 5 fails to state a claim upon
which relief can be granted and it should be dismissed.

## CONCLUSION

      For the foregoing reasons, the Court should grant EPA's Motion to Dismiss and dismiss
Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) or (6).

*Attorneys for Defendants*

Dated: June 2, 2023

RAYFORD A. FARQUHAR
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3100
rayford.farquhar@usdoj.gov

s/ *Miranda M. Jensen*
MIRANDA M. JENSEN
United States Department of Justice
Environment & Natural Resources
Division
P.O. Box 7611
Washington, D.C. 20044
(202) 598-3071
miranda.jensen@usdoj.gov