UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11863-RGS

CONSERVATION LAW FOUNDATION, INC. and
CHARLES RIVER WATERSHED ASSOCIATION, INC.

v.

MICHAEL S. REGAN,
DAVID CASH, and
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS

July 18, 2023

STEARNS, D.J.

The Conservation Law Foundation, Inc. (CLF), and the Charles River Watershed Association, Inc. (CRWA), bring this action against the United States Environmental Protection Agency (EPA), and Michael S. Regan and David Cash in their official capacities as the Administrator of the EPA and Regional Administrator of Region I of the EPA, respectively. The Complaint sets out five counts under the Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, alleging that the EPA failed to provide notice to newly covered dischargers after exercising its residual designation (Counts I and III), and that the EPA

has unreasonably and arbitrarily delayed publishing draft National Pollutant Discharge Elimination System (NPDES) permits (Counts II, IV, and V). Defendants now move to dismiss all five counts on Fed. R. Civ. P. 12(b)(1) and 12(b)(6) grounds.

## BACKGROUND

To reduce pollution, Congress established a permitting system called NPDES under the CWA. *See* 33 U.S.C. § 1342. Under the NPDES program, only entities which have obtained a permit issued by the EPA and authorized states, including Massachusetts, may discharge pollutants into jurisdictional waters. The NPDES program encompasses four different types of stormwater discharges. *See id.* §§ 1342(p)(2)(A)-(D). If the EPA determines that stormwater discharge falling outside of the four enumerated categories "contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States," the EPA may exercise its residual designation authority and subject the otherwise-exempt discharger to NPDES permitting requirements. *Id.* § 1342(p)(2)(E).

If the EPA exercises its residual designation authority, it may choose to require specific dischargers to apply for individual NPDES permits, or it may issue a general NPDES permit on a category-by-category basis. *See* 40 C.F.R. §§ 122.52(b), 122.28. The EPA's exercise of residual designation authority is

2

subject to a public comment period to consider whether the designation was proper. *Id.* § 122.52(b)-(c). After a residual designation, the EPA must prepare a draft NPDES permit, which is then subject to public notice and comment before a final permit is issued. *See id.* §§ 124.6, 124.10.

In May of 2019, the CLF and the CRWA petitioned the EPA to exercise its residual designation authority on "certain stormwater discharges from certain commercial, industrial, institutional, and multi-family residential properties in the Charles River Watershed." Compl. ¶ 78. In August of 2020, the CLF and the CRWA made the same residual designation requests for discharges in the Mystic River and Neponset River watersheds. *Id.* ¶¶ 90-99. On September 14, 2022, the EPA invoked its residual designation authority with respect to all three requests. *Id.* ¶ 107. However, the EPA has not since notified the newly covered dischargers of the residual designation or published a draft NPDES permit. Plaintiffs allege that these are nondiscretionary duties under the CWA and the EPA's implementing regulations.

In March of 2023, plaintiffs moved to stay any further litigation until September 8, 2024, after the EPA announced plans to publish the draft permits at issue in this case by the end of the summer of 2024. The court denied the motion, noting the length of the requested stay.

3

## DISCUSSION

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BETA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995). Plaintiffs bear the burden of establishing federal subject matter jurisdiction in this case. *See Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993). In determining whether plaintiffs have met their burden, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).

### I.   Counts I and III – Notice to Dischargers

After careful consideration, the court will dismiss Counts I and III, which challenge the EPA's alleged failure to give notice to the alleged dischargers after invoking its residual designation authority under the CWA and the APA. While plaintiffs are correct that claims of procedural injury deserve "special treatment" for standing, *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 27 (1st Cir. 2007), this relaxed standard is only

4

satisfied with respect to Counts II, IV, and V – the claims relating to the alleged failure of EPA to timely publish the draft NPDES permits in the Federal Register. Plaintiffs adequately plead that their members have suffered injuries traceable to the EPA's alleged foot-dragging as there is a direct link between airing the draft permit as a prerequisite to the official publication of a final permit addressing the plaintiffs' injuries. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (noting that one "has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.").

As to Counts I and III, however, the link between any allegations of harm to plaintiffs caused by "the impacts that unregulated stormwater discharges from land with impervious cover" and the lack of notice to the newly designated class of dischargers is far too tenuous and unsupported to establish standing, even under the more lenient procedural standard.[1]

---

[1] For the proposition that the EPA has a nondiscretionary duty to notify dischargers of a residual designation, plaintiffs cite to 40 C.F.R. § 124.52(b). *See* Compl. [Dkt # 1] ¶ 108. However, 40 C.F.R. § 124.52(b) defines the EPA's obligation to notify dischargers solely in the context of individual permitting, and not general permitting as is the case here. *See* 40 C.F.R. § 124.52(b) ("Whenever the Regional Administrator decides that *an individual permit* is required under this section, except as provided in

Unlike the publication of a draft permit, the failure to give notice of the residual designation to dischargers has no tangible link to the relief plaintiffs seek as it has no bearing on the issuance of a final permit.[2]

## II.   Counts II and IV – Failure to Issue Draft NPDES Permits

Plaintiffs also bring claims under the CWA and the APA for the EPA's allegedly unreasonable delay in publishing the draft NPDES permits. After reconsideration of the earlier briefing of this issue, the court will stay this aspect of the litigation until September 8, 2024 (as initially requested by plaintiffs) based on defendants' representation that it will publish the draft NPDES permits by the summer of 2024.  *See* Pls.' Mot. to Stay [Dkt # 6].

Defendants argue with some force that the First Circuit Court of Appeals has exclusive subject matter jurisdiction over the EPA's issuance or denial of NPDES permits, *see* 33 U.S.C. § 1369(b)(1)(F), as well as any suit "seeking relief that might affect the Circuit Court's future jurisdiction."

---

paragraph (c) of this section, the Regional Administrator shall notify the discharger in writing of that decision and the reasons for it, and shall send an application form with the notice.") (emphasis added).  Plaintiffs do not cite any obligation rooted in regulation or statute that the EPA has potentially violated.  For this reason, Counts I and III are also dismissible on Fed. R. Civ. P. 12(b)(6) grounds.

[2] Notably, plaintiffs do not request as relief an order that the EPA notify the newly designated class of dischargers of the residual designation, but only a declaration that the EPA has violated the CWA and APA by failing to do so.  *See* Compl. ¶¶ 149-157.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 78-79 (D.C. Cir. 1984). Here, where plaintiffs are asking the court to order the EPA to publish draft NPDES and a timeline for issuing the final NPDES permits within six months of this court's final judgment, Compl. ¶¶ 154-155, the requested relief is directly related to any future issuance or denial of a final NPDES permit.

The court agrees with plaintiffs that the Supreme Court's reasoning in *National Association of Manufacturers v. Department of Defense*, 138 S. Ct. 617, 631-632 (2018), precludes the application of § 1369(b)(1)(F). In the *Manufacturers* case, the Court limited subparagraph (F) to the narrow situation in which the EPA "issu[es] or den[ies]" a NPDES permit, but placed no such limit on EPA actions "relating to whether a permit is issued or denied," or to the determination of the boundaries of EPA's permitting authority. *Id.* at 632. Because plaintiffs do not challenge the issuance or denial of a NPDES permit, but only an alleged delay in publishing a draft permit, § 1369(b)(1)(F) does not apply.

The court is also doubtful that the CWA (and its attendant regulations) create a mandatory duty to publish a draft NPDES permit after a residual designation *within a certain time*. *See* 40 C.F.R. § 124.6(c) (noting that the EPA "shall" prepare a draft permit once tentatively deciding to issue a NPDES general permit, but not specifying when); *id.* § 124.6(d) (listing

7

myriad requirements for draft permits but no deadline for publication). It is also doubtful that the EPA, in not publishing the draft NPDES permits less than a year after its residual designation has defaulted on any mandatory duty. *See In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (stating a "reasonable time for agency action is typically counted in weeks or months, not years").[3] But absent any concrete guidance by a higher authority on the issue, and mindful that the plaintiffs' request for relief would be mooted by the publication of the draft permits, the court will as a matter of prudence stay proceedings on these counts as plaintiffs request.

## III.  Count V – Arbitrary and Capricious Agency Action

Plaintiffs' final count alleges that the EPA is acting in an arbitrary and capricious manner because it proceeded with publication of NPDES draft permits with respect to the Dominguez Channel/Greater Los Angeles and

---

[3] In arguing over Count IV, plaintiffs misstate the D.C. Circuit's holding in *In re Monroe Communications*, 840 F.2d 942 (D.C. Cir. 1988). While the petitioner in *Monroe* argued that the Federal Communications Commission (FCC)'s three-year delay in acting had been "unreasonably slow," the D.C. Circuit held that it could not "call the delay unreasonable" because the issue required a delicate balancing of policy and constitutional concerns and because it "must give agencies great latitude in determining their agendas." *Id.* at 945-946. A similar concern – the appropriate amount of deference afforded to agencies to make considered decisions based on expertise and technical analysis, and the time it takes to make these decisions – is additional reason to give at least temporary pause to this litigation.

Long Beach Harbor Watershed and the Los Cerritos Channel/Alamitos Bay Watershed in Los Angeles County and the Long Creek Watershed in Maine on the same day or the following day after a residual designation. *See* Compl. ¶¶ 144-145. The court will also stay consideration of this issue until September 8, 2024.

While it is possible that the EPA's residual designation is not a final agency action,[4] the reasonableness of the time differential between the different draft permit issuances may depend on idiosyncratic circumstances that remain to be developed before this court.

### ORDER

For the foregoing reasons, the court will <u>ALLOW</u> the Motion to Dismiss Counts I and III of the Complaint and stay consideration of the remaining Counts II, IV, and V until September 8, 2024.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[4] *See Berkshire Envtl. Action Team, Inc. v Tenn. Gas Pipeline Co.*, 851 F.3d 105, 111-112 (1st Cir. 2017) (finding that agency issuance of a formal document stating that the Massachusetts Department of Environmental Protection granted a Water Quality Certification was not final agency action because the regulatory regime still required an adjudicatory hearing reviewing the application, analogous to the yet-to-be-had public comment period on the appropriateness of the EPA's residual designation).